CAROLINE CROFT, trustee, petitioner.

Suffolk.     January 22, 1894. — June 23, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Trust — Will — Intention of Testator — Marriage Portion — Power.*

A testator, by his will, gave one hundred thousand dollars in trust, one half of the income thereof to be paid from time to time to his two granddaughters in such sums and at such times as the trustee should in his discretion consider for the best interest of the beneficiaries, and any balance of income that might from time to time remain was to be added to the principal. He then authorized the trustee, if his grandchildren or either of them should be married, at his discretion "to make and pay to them severally and to each of them such sum or sums as he may consider reasonable and proper as an advance or marriage portion from the said principal sum or its accumulations." If either of the granddaughters should decease leaving lawful issue, one half of the principal and its accumulations "less any advance by way of marriage portion which may have been made to such granddaughter" should go to such issue, and if either granddaughter should decease without leaving issue then the sum and its accumulations "less any advance by way of marriage portion which she may have received" was to be held in trust for the surviving grandchild; and if such surviving grandchild should die without leaving issue, the sum and its accumulations were to go to the testator's heirs at law. One of the granddaughters married, and soon afterward the trustee paid to her the sum of five thousand dollars as an advance or portion under the power. *Held*, that the trustee was authorized to make such an advance by way of a marriage portion only; that the testator did not intend that the whole of the principal sum should be so advanced, and that, by the payment of five thousand dollars to the granddaughter who married, the power of the trustee to make an advance as to her by way of marriage portion was exhausted.

PETITION IN EQUITY, filed September 11, 1893, for instructions, and for leave to sell real estate.

The petition alleged that the petitioner was a trustee under the will of Gardner Brewer, deceased, wherein she is called Caroline Abigail Brewer; that under clause thirteen of the will she held a fund in trust for Caroline Amory Lyman, the wife of George H. Lyman, called in the will Caroline Brewer Amory, for life, the fund upon the decease of Caroline Brewer Amory being limited in favor of her issue, and in case of her decease without issue her surviving, in favor of her sister Anna Sears Amory, and in the contingency of Anna Sears Amory dying without issue her surviving, in favor of the heirs at law of the testator; that the heirs at law of the testator at the time of his decease were the petitioner and Mary Elizabeth Penniman, daughters, and Caroline Brewer Amory and Anna Sears Amory, granddaughters; that Caroline Amory Lyman is married and has issue who are minors; that the fund so held for her amounts to about ninety-three thousand dollars, of which a part is invested in a homestead on Clarendon Street in Boston, and occupied by her and her family; that the testator, by his will, gave power to his trustee to give to Caroline Brewer Amory if she should marry an advance or portion; that Caroline Brewer Amory married on April 26, 1881, and soon after her marriage the petitioner gave her the sum of five thousand dollars as an advance or portion under the power, believing that that was all that it was advisable in view of the circumstances of the beneficiary and of the trust then to advance; that by the increase of the trust fund, and from other causes, the circumstances of Caroline Amory Lyman have since then materially changed, and a larger sum may now not unreasonably be given to her, if the power of the petitioner extends thereto. The prayer of the petition was that the petitioner might be authorized to sell the estate on Clarendon Street, and to pay to Caroline Amory Lyman the proceeds thereof, with such additional sum as would make a total advance of fifty thousand dollars.

Caroline Amory Lyman and her husband answered, admitting the allegations of the petition, and saying further that the increase of the fund set apart for her and her issue under clause thirteen of the will was due to the accumulation thereof before her marriage; that no part of the income was paid to her before that time; that the share of the residue which was payable to

her or to her issue upon the death of the testator's daughters under clause nineteen of the will was upwards of two hundred thousand dollars; that the testator's daughters were sixty and sixty-one years of age respectively, and that the value of the estate occupied by the respondents on Clarendon Street was about twenty-three thousand dollars, and the respondents contended that, on the facts stated in the petition and the answer, the trustee might properly make a further advance to Caroline Amory Lyman, and they prayed that the petition might be granted.

The guardian *ad litem* of the minor children of Caroline Amory Lyman answered that the power of the trustee to pay to Caroline Amory Lyman a sum or sums as an advance or marriage portion under clause thirteen of the will had been exhausted by the payment to her on her marriage of the sum of five thousand dollars.

The material portions of the testator's will, which was annexed to and made a part of the answer, are as follows:

" Thirteenth. I give to my daughter Caroline Abigail Brewer the sum of one hundred thousand dollars, to be held by her in trust, nevertheless for the uses and purposes hereinafter expressed, to wit: I direct the said Caroline Abigail Brewer to pay one half of the income which may be derived from the said one hundred thousand dollars, from time to time, to Caroline Brewer Amory, and one half to Anna Sears Amory, children of my deceased daughter Ellen. The payments so to be made to my said granddaughters are to be made at such time or times and in such sum or sums as the said Caroline Abigail Brewer may, in the exercise of her discretion, consider for the best interest of my said grandchildren, without reference to any guardian or husband, or to the control of any guardian or husband, which my said grandchildren, or either of them, may have ; the balance of income which may be derived from the said principal sum of one hundred thousand dollars, if any, which the said Caroline Abigail Brewer shall not, in the exercise of her discretion, consider it expedient to distribute, shall from time to time be added to the principal sum. If my said grandchildren, or either of them, shall be married, the said Caroline Abigail Brewer is authorized at her discretion to make and pay to them

severally and to each of them such sum or sums as she may consider reasonable and proper as an advance or marriage portion from the said principal sum or its accumulations. If either of my said grandchildren shall decease, leaving any child or children, her lawful issue, her surviving, then and in such event one half of the said principal sum and its accumulations, less any advance by way of marriage portion which may have been made to such granddaughter, shall go and be paid to her child or children, lawful issue as aforesaid, then living, share and share alike. If the said Caroline Brewer Amory or the said Anna Sears Amory shall decease without lawful issue her surviving, then the said sum and its accumulations, less any advance by way of marriage portion which she may have received, shall thereafter be held in trust by the said Caroline Abigail Brewer exclusively for the surviving grandchild, and if such surviving grandchild shall decease without lawful issue her surviving, the said sum and its accumulations shall go to my heirs at law. . . .

" Fifteenth. I give to my nephew Francis Willard Brewer the sum of one hundred thousand dollars, in trust, to pay the interest and income therefrom . . . to my daughter Mary Elizabeth Penniman, for and during her natural life, as and for her sole and separate estate, free from the marital rights of her present or any future husband. . . . At the decease of my said daughter Mary Elizabeth Penniman, the principal sum to be paid to such person or persons as she may direct and appoint by will or other testamentary paper; if she make no appointment, the said principal sum to be paid to such child or children of the said Mary as shall survive her. And the said Francis Willard Brewer may pay the said one hundred thousand dollars, or any part thereof, so as aforesaid given to him in trust for my daughter Mary, to my daughter Mary during her lifetime, notwithstanding the limitations and restrictions herein contained in relation thereto, if in his judgment such payment shall be required for her personal comfort and support ; and thereupon such payment, the said Brewer shall be discharged and released from the trust herein confided to him. . . .

" Nineteenth. At the death of the last survivor of my wife and daughters who may be living at my death, and not sooner, I order and direct that all the residuary trust property and estate

held by my trustee under the provisions of this my will shall be divided into so many equal shares; that there shall be one share for each of my daughters who may survive me, and shall leave lawful issue then living, or who, pursuant to the power herein given, shall have made a testamentary disposition of her share of said trust property, and one share for the lawful issue then living of either of my daughters who may have deceased during my lifetime, including the issue of my deceased daughter Ellen Amory, and I do order and direct that the said shares shall severally be disposed of as follows, that is to say: each and every of my daughters who shall survive me shall have full power and authority by her last will, or any testamentary writing by her subscribed in the presence of three or more witnesses, to direct and appoint to whom one of the aforesaid shares shall be given; but if my said daughters, or either of them, should fail to appoint, then and in such case the share of the daughter so failing shall be divided to and among her lawful issue, in the same proportions in which they would be entitled if my daughter had died seised of the same in her own right; and the share which may have been set apart for the lawful issue then living of a daughter who may have deceased in my lifetime, including my deceased daughter Ellen Amory, shall be divided to and among such issue in the same proportions in which they would have taken the same if such daughter had died seised thereof in her own right."

At the hearing, before *Lathrop*, J., the parties admitted the facts stated in the petition and answer of Caroline Amory Lyman, and, at their request, the judge reported the case upon the pleadings for the consideration of the full court.

*F. V. Balch*, for the petitioner, read the papers in the case.

*W. G. Russell & J. Fox*, for Caroline A. and George H. Lyman.

*J. B. Warner*, guardian *ad litem* for the minor children of Mrs. Lyman and all persons unborn or unascertained who might have an interest.

MORTON, J. Not much assistance can be derived from authorities in deciding the question which is raised in this case. Indeed, it may be said generally that in considering the obscure provisions which are often found in wills little help is to be

obtained from precedents. Each case depends so much on the peculiar phraseology employed, that it is seldom that the decision in one case throws very much light on that which should be made in another.

By the thirteenth clause of his will, the testator gave to his daughter Caroline one hundred thousand dollars in trust, to pay one half of the income from time to time to Caroline Brewer Amory and Anna Sears Amory, children of his deceased daughter Ellen. The payments were to be made in such sums and at such times as said Caroline should, in the exercise of her discretion, consider for the best interests of said grandchildren, and any balance of income that might remain was from time to time to be added to the principal. Following these provisions comes the one which we are asked to construe : " If my said grandchildren, or either of them, shall be married, the said Caroline Abigail Brewer is authorized at her discretion to make and pay to them severally and to each of them such sum or sums as she may consider reasonable and proper as an advance or marriage portion from the said principal sum or its accumulations " ; if either of said grandchildren shall decease leaving lawful issue, one half of the principal and its accumulations, " less any advance by way of marriage portion which may have been made to such granddaughter," shall go to such issue ; if either granddaughter shall decease without leaving issue, then the said sum and its accumulations, again " less any advance by way of marriage portion which she may have received," is to be held in trust exclusively for the surviving grandchild ; and if such surviving grandchild dies without leaving issue, then said sum and its accumulations are to go to the testator's heirs at law. It is apparent, we think, from these provisions that the testator did not contemplate that the whole of the principal sum should be used for marriage portions to the two granddaughters. It is also apparent, we think, that the payment which the trustee is authorized to make to each grandchild is to be by way of marriage portion. Those words describe the character of the advance which the trustee is given power to make. The trustee is not authorized to make payments from time to time to the granddaughters for their support or greater comfort. By marriage portion is commonly understood the property, usually a substantial amount, which a

woman brings with her upon her marriage. *Johnson* v. *Goss*, 132 Mass. 274. *Ogden* v. *Ogden*, 1 Bland, 284. *De Young* v. *De Young*, 6 La. An. 786. Co. Lit. 31 *a*. 2 Bl. Com. 129. 1 Scribner, Dower, c. 1, § 4. Bouv. Law Dict. Anderson, Law Dict.

No doubt a marriage portion may be so given that payments may be made on account of it from time to time after marriage, and perhaps in some cases the words have been applied to payments made to the wife, or to property brought in by her, after marriage. *Brown* v. *Jones*, 1 Atk. 188. *Holt* v. *Holt*, 2 P. Wms. 648. *Ward* v. *Shallet*, 2 Ves. Sen. 16. *Ramsden* v. *Hylton*, 2 Ves. Sen. 304. *Colvile* v. *Parker*, Cro. Jac. 158. But that is not the usually accepted meaning. The question, then, is, What did the testator intend in this case? If the words " such sum or sums " are to be read as applying to such granddaughter, the inference would be very strong that the trustee was to have power to pay at once, or from time to time, such amount or amounts as she might deem reasonable and proper by way of a marriage portion. But we think they were intended to cover the case of a payment to one alone, or of a payment to each, rather than successive payments to the same grandchild. In the next sentence the payment which is authorized is spoken of as " any advance by way of marriage portion." And the same expression is repeated in the next, as well as in the concluding sentence of the paragraph. If the testator had had in mind a marriage portion to be paid from time to time, he naturally would have said " any advances by way," etc. Again, under the construction contended for by Mrs. Lyman the trustee would have power if both grandchildren married, and possibly if only one married, to pay over to them by way of advances for marriage portions the entire principal and its accumulations. It is apparent, we think, as already stated, that the testator did not contemplate such a disposition of the fund. It is to be observed further, that it appears from clause fifteen that when the testator wished to give to his trustee the right to pay over the entire principal from time to time to a beneficiary, he manifested his purpose in clear and unmistakable language. Upon the whole, we think that, according to the construction which we feel obliged to give to the will, the power of the trustee to make an advance by way of marriage portion to Mrs. Lyman has been exhausted by the payment that has been made.

However desirable it might be, in view of the changed circumstances of Mrs. Lyman, that the trustee should have the power to make an additional advance to her, it is manifest that that cannot justify us in departing from the will of the testator.

*Petition dismissed.*